UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

JULIE O'STEEN, et al.,

      Plaintiffs,

v.                           Case No. 8:16-cv-2993-T-33MAP

WELLS FARGO BANK, N.A., et al.,

      Defendants.

_____/

**ORDER**

This matter comes before the Court in consideration of Defendants Wells Fargo Bank, N.A. and Wells Fargo Home Mortgage, Inc.'s Motion to Dismiss Complaint or, in the alternative, Motion for More Definite Statement (Doc. # 35), filed on February 3, 2017, as well as Defendant Rushmore Loan Management Services, LLC's Motion to Dismiss Plaintiffs' Amended Complaint (Doc. # 36), filed on February 10, 2017. Plaintiffs Julie O'Steen and Christopher O'Steen filed a response in opposition to both Motions on February 23, 2017. (Doc. # 41). For the reasons that follow, the Motions are granted in part and denied in part.

**I.**   **Background**

This action arises from alleged breach of contract and violations of Regulation X, 12 C.F.R. § 1024, et seq., which

implements the provisions of The Real Estate Settlement Procedures Act, 12 U.S.C. §§ 2601, et seq. (RESPA). Wells Fargo Bank originated a loan and securing mortgage, the funds of which were used by the O'Steens to "purchase or refinance" their primary residence. (Doc. # 24 at ¶¶ 14, 15). Although it was not always clear which of the Wells Fargo Defendants was servicing the O'Steens' loan at any given time, "it was clear that the two worked in concert to service the loan prior to Rushmore's involvement." (Id. at ¶ 16).

During the end of 2013, the O'Steens "fell into financial distress" and Wells Fargo Bank instituted foreclosure proceedings. (Id. at ¶ 17). At the same time, the O'Steens sought a loan modification from the Wells Fargo Defendants and applied to Florida's Hardest Hit Program, "a government program designed to protect homeowners from temporary financial distress and provide them with a means to reinstate their home loans and avoid foreclosure." (Id.). In January of 2014, the O'Steens learned that their application to the Hardest Hit Program had been approved and they received an amount of funds sufficient to bring the loan current from the Program in February of 2014. (Id. at ¶ 18).

The O'Steens twice attempted to tender reinstatement funds to the Wells Fargo Defendants; however, the Wells Fargo

2

Defendants rejected both tenders. (Id. at ¶¶ 19, 20). Then, in October of 2014, the O'Steens submitted a complete loss mitigation application and, in response, the Wells Fargo Defendants offered the O'Steens a trial modification plan, which they accepted. (Id. at ¶ 21). "The trial payment plan indicate[d] the trial payments were to last for three months, before converting to a permanent modification plan." (Id. at ¶ 22). The O'Steens made fourteen payments under the trial payment plan, but the Wells Fargo Defendants "never offered the permanent modification as promised." (Id.).

Presumably having received a judgment in their favor in the foreclosure proceedings, although the Amended Complaint is not clear on that point, the Wells Fargo Defendants scheduled the foreclosure sale for December of 2014. (Id. at ¶ 23). After retaining counsel, the O'Steens moved to re-open the foreclosure proceedings and filed an emergency motion to cancel. (Id. at ¶ 25). Prior to notifying the O'Steens of a servicing transfer of their loan to Rushmore in March of 2016, the Wells Fargo Defendants began to reject the O'Steens payments made pursuant to the trial payment plan "under the pretext that they were insufficient to 'reinstate' the loan." (Id. at ¶ 26). When Rushmore became the new servicer, "[i]t did not honor either the trial period payment plan, nor did

3

it honor Wells Fargo's promise of a permanent modification." (<u>Id.</u> at ¶ 28). Rushmore has moved to set a new foreclosure sale, but that motion has not been ruled on by the state court. (<u>Id.</u> at ¶ 29).

The O'Steens instituted this action on October 24, 2016. (Doc. # 1). Upon Rushmore's motion, the Complaint was dismissed as a shotgun pleading and the O'Steens were granted leave to amend. (Doc. # 21). The O'Steens timely filed their Amended Complaint bringing the following claims: breach of contract against the Wells Fargo Defendants (Count I); breach of contract against Rushmore (Count II); violation of Regulation X against the Wells Fargo Defendants (Count III); violation of Regulation X against Rushmore (Count IV); a stand-alone claim for injunctive relief against Rushmore (Count V); and declaratory judgment under 28 U.S.C. § 2201 against Rushmore. All three Defendants have filed motions to dismiss, which are now ripe for adjudication.

## II.  <u>Legal Standard</u>

On a motion to dismiss, this Court accepts as true all the allegations in the complaint and construes them in the light most favorable to the plaintiff. <u>Jackson v. Bellsouth Telecomms.</u>, 372 F.3d 1250, 1262 (11th Cir. 2004). Further, this Court favors the plaintiff with all reasonable

inferences from the allegations in the complaint. <u>Stephens v. Dep't of Health & Human Servs.</u>, 901 F.2d 1571, 1573 (11th Cir. 1990) (stating "[o]n a motion to dismiss, the facts stated in [the] complaint and all reasonable inferences therefrom are taken as true"). However:

> [w]hile a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do. Factual allegations must be enough to raise a right to relief above the speculative level.

<u>Bell Atl. Corp v. Twombly</u>, 550 U.S. 544, 555 (2007) (internal citations omitted). Courts are not "bound to accept as true a legal conclusion couched as a factual allegation." <u>Papasan v. Allain</u>, 478 U.S. 265, 286 (1986).

## III. <u>Analysis</u>

### A. <u>Counts Pertaining to the Wells Fargo Defendants</u>

#### 1. <u>Count I</u>

The Wells Fargo Defendants seek to have the claim for breach of contract dismissed on the grounds that it fits within the description of a shotgun pleading; specifically, that the allegations are too conclusory. A review of the breach-of-contract claim, however, demonstrates that the facts, as alleged, are enough to raise the O'Steens' claim

into the realm of plausibility. Although the Wells Fargo Defendants assert the Amended Complaint "provide[s] no details . . . as to whether a permanent modification was actually required to be offered . . . and . . . no indication of what the terms of any permanent modification would be," (Doc. # 35 at 6), those types of arguments are more appropriate for summary judgment. At this preliminary stage of the proceedings, when the Court must accept the well-pled allegations, Count I of the Amended Complaint asserts a plausible claim to relief. Accordingly, the Wells Fargo Defendants' Motion is denied as to Count I.

## 2.  <u>Count III</u>

Count III of the Amended Complaint alleges the Wells Fargo Defendants violated 12 C.F.R. §§ 1024.36(c)(1), 1024.38(a) and (b), 1024.40(b)(1)(iii), 1024.41(d), and 1024.41(g). (Doc. # 24 at ¶¶ 47, 48, 49, 50, 51). The Wells Fargo Defendants seek to have Count III dismissed on the grounds that it is of the shotgun variety and on the merits.

In their response, the O'Steens concede "paragraphs 47-49 do not allege actionable claims under RESPA and therefore withdraw the allegations in those paragraphs." (Doc. # 41 at 5-6). Furthermore, although the O'Steens do not explicitly withdraw paragraph 52, which alleges the Wells Fargo

Defendants engaged in a pattern of violations, they do "acknowledge that two violations[, i.e., the remaining two regulations alleged to have been violated—12 C.F.R. §§ 1024.41(d) and (g),] do not suffice to allege a 'pattern or practice' . . . ." (Id. at 6). Thus, it is unclear whether the O'Steens intend to still argue that the Wells Fargo Defendants engaged in a pattern of violations.

Accordingly, paragraphs 47 through 49 of the Amended Complaint are dismissed. In addition, Count III constitutes a shotgun pleading. To be sure, as noted by the Court, each cause of action or claim for relief must be separated into different counts. (Doc. # 21 at 5). Count III, however, contains two claims for relief: one for a putative violation of 12 C.F.R. § 1024.41(d) and one for an alleged violation of 12 C.F.R. § 1024.41(g). In addition, although the O'Steens acknowledge two violations are not enough to evince a pattern, they did not withdraw paragraph 52, which alleges a pattern of violations. Thus, uncertainty remains as to what the O'Steens are actually alleging. Count III is therefore dismissed with leave to amend.

### B.   Counts Pertaining to Rushmore

#### 1.   Count II

Relying on Senter v. JPMorgan Chase Bank, N.A., 810 F. Supp. 2d 1339, 1351 (S.D. Fla. 2011), Rushmore seeks to have the breach-of-contract claim brought against it dismissed for failure to allege a valid contract. While the court in Senter held that the trial modification agreement at issue in that case did not constitute a valid contract, the court in Senter had a critical piece of information that this Court does not have before it: the language of the agreement itself.

A review of Senter shows that the court's analysis was based on the language of the agreement at issue in that case. Senter, 810 F. Supp. 2d at 1351 ("[t]he plain language of the TPP Agreements . . ."). Here, however, none of the parties provided the Court with the actual trial modification agreement. Thus, the Court is unable to determine the terms of the agreement and, consequently, cannot determine whether Rushmore's arguments regarding the validity of the contract are correct. Accordingly, Rushmore's Motion is denied as to Count II.

#### 2.   Count IV

Count IV of the Amended Complaint alleges Rushmore violated 12 C.F.R. §§ 1024.36(c)(1), 1024.38(a) and (b),

1024.40(b)(1)(iii), and 1024.41(g). (Doc. # 24 at ¶¶ 57, 58, 59, 60). Rushmore seeks dismissal of Count IV on the grounds that it alleges a violation of a nonexistent regulation, § 1024.36(c)(1), and fails to state a claim upon which relief may be granted because the allegations do not relate to servicing a loan.

In their response, the O'Steens concede "paragraph[s] 57-59 of the Amended Complaint do not allege actionable claims under RESPA and therefore withdraw the allegation in those paragraphs." (Doc. # 41 at 7). Furthermore, although the O'Steens do not explicitly withdraw paragraph 61, which alleges that Rushmore engaged in a pattern of violations, they do "acknowledge that the allegation of a single violation does not rise to the 'pattern or practice' standard required to recover statutory damages." (Id.). Thus, it is unclear whether the O'Steens intend to still argue that Rushmore engaged in a pattern of violations.

Accordingly, paragraphs 57 through 59 of the Amended Complaint are dismissed. In addition, although the O'Steens acknowledge a single violation is not enough to evince a pattern, they did not withdraw paragraph 61, which alleges a pattern of violations. Thus, uncertainty remains as to what

the O'Steens are actually alleging. Count IV is therefore dismissed with leave to amend.

### 3.   Count V

Rushmore argues Count V, which is a stand-alone claim for injunctive relief against Rushmore, should be dismissed for, among other things, lack of subject-matter jurisdiction pursuant to the Rooker–Feldman doctrine.[1] "The *Rooker–Feldman* doctrine precludes federal courts—other than the United States Supreme Court—from reviewing final judgments of state courts." Figueroa v. MERSCORP, Inc., 477 Fed. Appx. 558, 560 (11th Cir. 2012) (citing Casale v. Tillman, 558 F.3d 1258, 1260 (11th Cir. 2009)). And that doctrine "'is confined to cases of the kind from which the doctrine acquired its name;'" namely, where "'the losing party in state court filed suit in federal court after the state proceedings ended, complaining of an injury caused by the state-court judgment and seeking review and rejection of that judgment.'" Nicholson v. Shafe, 558 F.3d 1266, 1274-75 (11th Cir. 2009) (quoting Exxon Mobil

---

[1] Because Rushmore asserts a factual attack on the Amended Complaint, the Court may properly look to evidence beyond the four-corners of the Amended Complaint. Echeverry v. Wells Fargo Bank, N.A., No. 16-cv-61635-GAYLES, 2017 WL 733374, at *2 (S.D. Fla. Feb. 24, 2017).

10

Corp. v. Saudi Basic Indus. Corp., 544 U.S. 280, 284, 291
(2005)).

The Eleventh Circuit has indicated that, "[g]enerally
speaking," a state proceeding ends

> (1) "when the highest state court in which review
> is available has affirmed the judgment below and
> nothing is left to be resolved," (2) "if the state
> action has reached a point where neither party
> seeks further action," and (3) "if the state court
> proceedings have finally resolved all the federal
> questions in the litigation, but state law or
> purely factual questions (whether great or small)
> remain to be litigated."

Id. at 1275 (quoting Federacion de Maestros de Puerto Rico v.
Junta de Relaciones del Trabajo de Puerto Rico, 410 F.3d 17,
24-25 (1st Cir. 2005)). The second-prong approved of by
Nicholson means that "if a lower state court issues a judgment
and the losing party allows the time for appeal to expire,
then the state proceedings have ended." Id. (citation
omitted).

As a preliminary matter, it is the O'Steens that bear
the burden of demonstrating the Court's exercise of
jurisdiction is proper. Bishop v. Reno, 210 F.3d 1295, 1298
(11th Cir. 2000). However, they have failed to carry that
burden.

The argument asserted by the O'Steens with respect to
why the Rooker-Feldman doctrine does not bar jurisdiction is

11

premised on a misreading of Nicholson. While the O'Steens argue the court in Nicholson "applied a three-prong test to determine whether the state-court action had ended," (Doc. # 41 at 8), a closer reading of Nicholson shows differently. Rather, the court in Nicholson observed that there are three instances—each sufficient on its own—that generally indicate the end of a state proceeding for purposes of Rooker-Feldman. Nicholson, 558 F.3d at 1275. And those three instances are

> (1) "when the highest state court in which review
> is available has affirmed the judgment below and
> nothing is left to be resolved," (2) "if the state
> action has reached a point where neither party
> seeks further action," and (3) "if the state court
> proceedings have finally resolved all the federal
> questions in the litigation, but state law or
> purely factual questions (whether great or small)
> remain to be litigated."

Id.

Although Rushmore argues the first Nicholson scenario "clearly appl[ies]," (Doc. # 36 at 9), the Court disagrees. From the record before the Court, it is apparent that the O'Steens did not appeal the state court's judgment of foreclosure. (Id. at 9-10); see also (Doc. # 41) (not contesting that the O'Steens failed to take an appeal from the judgment of foreclosure). By the O'Steens' election to forego appellate review of that judgment, no appellate court

could have reviewed or affirmed the judgment below. Thus, the first scenario does not apply.

However, because the O'Steens did not appeal the judgment of foreclosure, the second Nicholson scenario does apply. Federacion, 410 F.3d at 24 ("Second, if the state action has reached a point where neither party seeks further action, then the state proceedings have also 'ended.' For example, if a lower state court issues a judgment and the losing party allows the time for appeal to expire, then the state proceedings have ended."); cf. Nicholson, 558 F.3d at 1275 ("the second situation implies that a state proceeding has not ended when a state court loser seeks 'further action,' such as an appeal.").

Furthermore, because the Court has an independent duty to ensure jurisdiction is properly exercised, the Court notes that the third Nicholson scenario also applies here. The record before the Court does not indicate any federal questions remain to be litigated in the state-court foreclosure proceeding. Instead, only the sale of the home—a matter purely of state law—remains. Thus, this action fits within the second and third Nicholson factors, which means the state-court proceeding has ended for purposes of the Rooker-Feldman doctrine.

The O'Steens continue their argument by asserting they do not seek to challenge, or have this Court review, the validity of the state court's foreclosure judgment. (Doc. # 41 at 9). The Court disagrees. Essentially, what the O'Steens seek from this Court is an injunction barring Rushmore, which, as alleged, is the servicer of their loan and the successor-in-interest to the Wells Fargo Defendants (Doc. # 24 at ¶¶ 27-28), from enforcing a state court judgment. The practical effect of such an injunction would be to nullify the state court's judgment. As such, the Court finds that the claim for injunctive relief is inextricably intertwined with the state-court judgment of foreclosure.

Accordingly, because the state-court proceeding has ended and the claim for relief sought herein is inextricably intertwined with the state-court judgment, Rushmore's Motion is granted to the extent that Count V is dismissed for lack of subject-matter jurisdiction pursuant to the Rooker-Feldman doctrine. Because the Court has dismissed Count V for lack of jurisdiction, the Court declines to opine on Rushmore's alternative argument under the Anti-Injunction Act.

    4.   **Count VI**

Count VI seeks declaratory relief. In order

> "[t]o proceed with a Declaratory Judgment Act claim, there must be an actual issue in controversy as opposed to one that is hypothetical or contrived, the case must not be the medium for securing an advisory opinion, the matter must be definite and concrete, the parties' positions must be defined and adversarial and the issues must be susceptible to judicial determination."

Kingsley v. State Farm Mut. Auto. Ins. Co., 353 F. Supp. 2d 1242, 1254 (N.D. Ga. 2005) (citation omitted).

Rushmore's argument is not so much that an issue is not in controversy as much as it is that the Amended Complaint fails to sufficiently plead facts showing a plausible claim to relief. A fair reading of the Amended Complaint shows that there is an extant controversy between the parties with respect to whether Rushmore violated RESPA and breached a contract. Whether Rushmore's actions or inactions actually violated RESPA or whether a contract actually existed remains to be seen. But for now, at this preliminary stage, Count VI is sufficient to survive Rushmore's Motion.

Accordingly, it is

**ORDERED, ADJUDGED,** and **DECREED:**

(1)   Defendants Wells Fargo Bank, N.A. and Wells Fargo Home Mortgage, Inc.'s Motion to Dismiss Complaint or, in the alternative, Motion for More Definite Statement (Doc. # 35) is **GRANTED IN PART AND DENIED IN PART**. The Motion is

**DENIED** with respect to Count I, but **GRANTED** to the extent that Count III is dismissed with leave to amend.

(2)  Defendant Rushmore Loan Management Services, LLC's Motion to Dismiss Plaintiffs' Amended Complaint (Doc. # 36) is **GRANTED IN PART AND DENIED IN PART**. The Motion is **DENIED** as to Counts II and VI. However, the Motion is **GRANTED** insofar as Count IV is dismissed with leave to amend and Count V is dismissed for lack of subject-matter jurisdiction.

(3)  The O'Steens may file a second amended complaint that conforms to this Court's Order by March 15, 2017.

**DONE** and **ORDERED** in Chambers in Tampa, Florida, this 1st day of March, 2017.

VIRGINIA M. HERNANDEZ COVINGTON
UNITED STATES DISTRICT JUDGE